UNITED STATES of America, Plaintiff,

v.

Gilbert G. BURNS, Defendant.

No. 92–10043–01.

United States District Court, D. Kansas.

Jan. 14, 1993.

Kim Fowler, Asst. U.S. Atty., for plaintiff.

Cyd Gilman, Fed. Public Defender, for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court for final disposition. The court held a hearing on January 11, 1993 on the competency, sanity, and dangerousness of the defendant. The defendant, Gilbert G. Burns, was charged in a one count indictment with being an unlawful user of or addicted to a controlled substance who did unlawfully ship or transport in interstate commerce, or possess in or affecting commerce, any firearm or ammunition, or receive any firearm or ammunition which had been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(3). Indictment, Doc. 11.

The events which gave rise to this charge are as follows. On April 29, 1992, at approximately 4:00 p.m., the defendant arrived at the Visitor's Gate at McConnell Air Force Base and stated that he needed a ride to Wright Patterson Air Force Base. The defendant stated that he had certain top secret information and that he needed protection because people were after him. The defendant stated that he had official documents in his vehicle. Air Force personnel accompanied the defendant to his car to obtain these documents. Upon arriving at the defendant's car, Air Force personnel observed in the rear seat of the car an AR–15 semi-automatic rifle with clip inserted. The rifle was seized and determined to be loaded, with a round in chamber and the selector set in fire position. A search of the car pursuant to defendant's consent disclosed a loaded .380 PMK semi-automatic hand gun in the front seat, approximately 100 rounds of ammunition, and approximately 16.04 grams of marijuana. *See* Affidavit of Robert K. Jobe, Att. to Doc. 1. The defendant was subsequently sent to the Medical Center for Federal Prisoners in Springfield, Missouri, for psychiatric examination and evaluation regarding the defendant's competency for trial and sanity at the time of the alleged offense. Doc. 10.

Title 18 U.S.C. § 4241 contains the procedures governing the determination of mental competency to stand trial. Pursuant to 18 U.S.C. § 4241(d), the court must hold a hearing and determine by a preponderance of the evidence whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense ..." Pursuant to 18 U.S.C. § 4242(b), when the defense of insanity at the time of the offense is raised, the court may find the defendant: guilty; not guilty; or not guilty only by reason of insanity.

Pursuant to 18 U.S.C. § 4243(a), a person who has been found not guilty only by reason of insanity shall be committed to a suitable facility until such time as he is eligible for release. The court shall hold a hearing, at which the defendant bears the burden of proving by clear and convincing evidence "that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." *Id.* § 4243(d). If, after the hearing, the court fails to find by clear and convincing evidence that the defendant's release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect, the court shall commit the person to the custody of

the Attorney General. *Id.* § 4243(e). The Attorney General shall release the defendant to the State for treatment or shall hospitalize the defendant in a suitable facility if the State will not assume responsibility for the defendant's care, custody and treatment. *Id.* The statute sets forth the procedures to be followed when the defendant has recovered sufficiently to be discharged from the hospital. *Id.* § 4243(f).

■ The court shall first discuss whether the defendant is presently competent to stand trial and whether he was insane at the time of the events giving rise to the charge. The defendant was evaluated from May 21 through July 6, 1992 by clinical psychologist Robert L. Denney at the Medical Center for Federal Prisoners. Dr. Denney found that the defendant suffered from a major mental illness or defect which prevents him from understanding the nature and consequences of the proceedings against him or from assisting his attorney in preparing an adequate defense. Dr. Denney also found that the defendant possessed a severe mental disease or defect at the time of the alleged offense that rendered him unable to appreciate the nature, quality, or wrongfulness of the criminal act he is alleged to have committed. The court finds that, since the time of the evaluation, the defendant has improved to the extent that he is presently competent. However, the court agrees with Dr. Denney's assessment that the defendant was legally insane at the time of the alleged offense.

■ Dr. Denney's report summarizes the defendant's numerous hospitalizations for psychiatric reasons from 1976 through 1989. The doctors who treated the defendant during these times repeatedly misdiagnosed the defendant's illness as being drug-induced psychosis, when the defendant actually suffers from paranoid schizophrenia. The defendant has had a poor history of continuing his medications upon release from the hospital, which has resulted in numerous hospitalizations when psychotic episodes recur. Additionally, the defendant has a long history of marijuana abuse, which merely exacerbates his psychotic symptoms.

Dr. Denney's report summarizes the events leading up to the alleged offense. The court shall not discuss these matters in detail. The court merely notes that the defendant was experiencing various persecutory and grandiose delusions which caused him to go to McConnell Air Force Base for assistance. It does not appear that the defendant received any medication for schizophrenia during his evaluation at Springfield. The defendant's behavior apparently improved in the structured setting of the hospital; however, the defendant remained actively psychotic and delusional. Dr. Denney made the following diagnoses: Schizophrenic, Paranoid, Chronic with Acute Exacerbation; Cannabis Abuse; and Antisocial Personality Traits.

The defendant testified at the hearing and appeared lucid and coherent. He testified that he currently takes prescription medications for schizophrenia, anxiety and depression, and for the side effects of the schizophrenia drugs. The defendant acknowledged the necessity of continuing to take his medications on a daily basis. The defendant testified that at the time of the episode leading to the indictment, he had ceased taking his medications because of the cost. The defendant acknowledged that his mental condition in April 1992 was not good. He testified that he did not think he understood the nature and consequences of his actions at the time. The defendant did, however, appear to understand the nature of the hearing and understood it was his burden to demonstrate that he was not dangerous. The defendant believed that he was presently able to assist in his defense. Accordingly, the court finds by a preponderance of the evidence that the defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to stand trial.

After considering the report of Dr. Denney, the court finds the defendant not guilty only by reason of insanity of the charge against him. The stipulated factual background of the case, the recent diagnoses of schizophrenia coupled with the defendant's past failure to take his medi-

cation, as well as the defendant's own testimony, demonstrate to the court that the defendant was suffering from a severe mental disease or defect at the time of the alleged offense that rendered him unable to appreciate the nature, quality, or wrongfulness of his acts.

The court must now determine whether the defendant is dangerous. At the request of defendant's counsel, the defendant was evaluated by William S. Logan, M.D., the Director of the Department of Law and Psychiatry at the Menninger Clinic. The purpose of the evaluation was to determine whether the release of the defendant would create a substantial risk of bodily injury to another person or serious damage to the property of another.

Dr. Logan's report discussed the defendant's numerous hospitalizations for mental illness. Dr. Logan opined that the defendant suffers from schizophrenia, paranoid type, chronic, with an acute exacerbation that is only in partial remission. While the defendant was not overtly violent or agitated, he continued to be delusional.

The defendant's testimony at the hearing reflected some continuing paranoid delusions, a result perhaps of the lack of consistent treatment over the course of time. Dr. Logan reported that some of the defendant's delusions might have become fixed because he had not been properly treated in the past. Over the course of some ten hospitalizations, the doctors at Larned State Hospital failed to diagnose the defendant as suffering from paranoid schizophrenia. The doctors at Larned attributed the defendant's difficulties to substance abuse.

Dr. Logan opined that when the defendant is psychotic, he can present a risk to other individuals or property. Dr. Logan noted that several hospital admissions occurred after alleged violent conduct. The defendant's first admission to Larned in 1983 involved an attempt by the defendant to get a gun from a police officer and to hurt his father. During his second admission to Larned, the defendant was described as being aggressive and combative and required restraints. His third admission to Larned was precipitated when the defendant threatened a doctor with a gun. In early 1988, the defendant allegedly attempted to strike two men with an iron bar who offered him a ride while defendant was hitchhiking. In a 1989 admission to Larned, the defendant was threatening, violent and extremely agitated.

During his testimony at the hearing, the defendant denied two of these incidents of violence set forth by Dr. Logan. The defendant's testimony that Dr. Logan fabricated these incidents and that Dr. Logan had perhaps received a "payoff" reflects that defendant's paranoid delusions are continuing even with proper medication.

In 1988, the defendant was charged with felony aggravated assault and aggravated battery. Those charges were subsequently reduced to misdemeanors. Defendant acknowledged these misdemeanor convictions, but claimed to have no memory of the incident.

Dr. Logan further noted that the defendant responded well to the structure of an institutional setting and to low doses of antipsychotic medication. However, the defendant has had difficulties in an outpatient setting because of his failure to refrain from marijuana use. The defendant has repeatedly sought out firearms, which greatly increases the risk of harm to others that could occur when the defendant is in a paranoid psychotic state. Dr. Logan concluded that it would be unwise to discharge the defendant at the present time, since the defendant remains psychotic with ongoing delusional thinking. Dr. Logan recommended continued hospitalization and treatment for schizophrenia. Once the defendant has adequately stabilized on antipsychotic medication, Dr. Logan opined that it would be safe to discharge the defendant on a conditional release.

Based on the evidence presented at the hearing and the reports of the experts, the court must conclude that the defendant failed to demonstrate by clear and convincing evidence that his release would not involve a substantial risk of bodily injury to others or serious damage to property of

others. The mental health professionals have opined that the defendant suffers from a severe mental disease. The defendant's history demonstrates an inability or unwillingness to continue on medication following his release from the hospital. The defendant's history also reflects a serious marijuana abuse problem which resurfaces after his release from the hospital. The defendant's history further reflects a substantial risk of bodily injury to others when the defendant is in a psychotic state. At the time of the hearing, the defendant appeared to be somewhat stable. The defendant has improved during the time he has been in custody. However, the court does not believe that the defendant has improved sufficiently so as not to constitute a substantial risk of danger to others.

The court notes that Dr. Logan strongly recommended against hospitalization at Larned State Hospital. The doctors at Larned repeatedly failed to diagnose and treat the defendant. Further, Dr. Logan believes that Larned State Hospital provided inadequate outpatient services to maintain the defendant's stability. The court accordingly doubts whether Larned State Hospital is a suitable facility (as that term is defined in 18 U.S.C. § 4247(a)(2)) for the treatment of the defendant. The court notes that Dr. Logan has recommended Topeka State Hospital or the Medical Center for Federal Prisoners in Springfield, Missouri as suitable facilities for the defendant's custody, care and treatment. The court concurs with Dr. Logan's assessment that, following further hospitalization to stabilize his condition, the defendant should be safe to release on the types of conditions set forth in Dr. Logan's report.

IT IS BY THE COURT THEREFORE ORDERED that the court finds the defendant presently competent to stand trial.

IT IS FURTHER ORDERED that the court finds the defendant not guilty only by reason of insanity of the charge contained in Count I of the Indictment.

IT IS FURTHER ORDERED that the court finds that the release of the defendant would create a substantial risk of bodily injury to others or serious damages to property of others due to a present mental disease.

IT IS FURTHER ORDERED that the defendant is committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4243(e) for treatment in a suitable facility.