UNITED STATES of America

v.

Robert Allen JACKSON.

Crim. No. 3:91–CR–0293–H.

United States District Court,
N.D. Texas.

Feb. 18, 1993.

Michael R. Snipes, Asst. U.S. Atty., Dallas, TX, for plaintiff.

Suzanna Perez, Federal Public Defender, Dallas, TX, for defendant.

MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

On January 27, 1993, a hearing was held in this case under Section 4243(c) of Title 18, United States Code. At the hearing, Defendant failed to meet the requirements for release under Section 4243(d) of Title 18, United States Code. Accordingly, Defendant is committed to the custody of the Attorney General. *See* 18 U.S.C. § 4243(e).

## I. BACKGROUND

On August 6, 1992, this Court reached a special verdict finding the Defendant not guilty only by reason of insanity of the offenses under which he had been indicted on November 19, 1991. The indictment charged violations of sections 2113(a), 2113(d), 924(a)(2), 924(c)(1), & 922(g)(1) of Title 18, United States Code, in connection with an armed robbery. The Court ordered the Defendant to be hospitalized at the United States Medical Center for Federal Prisoners at Springfield, Missouri, and to be examined there by a competent doctor of psychiatry or psychology. *See* 18 U.S.C. § 4243(a).

On September 3, 1992, at the request of the examining doctor and with the consent of counsel, the Court extended the pre-hearing examination period until October 14, 1992. *See* 18 U.S.C. § 4243(c). At the request of counsel for both parties, the Court further postponed a hearing pending investigation of Defendant's involvement in the alleged sexual assault of an inmate that occurred at the Springfield facility on October 19, 1992.

The report of Defendant's mental examination at Springfield was received by the Court on October 8, 1992, and filed by the Clerk on January 25, 1993. *See* 18 U.S.C. §§ 4243(b) & 4247(b), (c). The report informed the Court that Defendant's mental disease of paranoid schizophrenia is in remission. The remission is contingent on Defendant's continuing to take prescribed medication. Overall, Defendant's examining doctors reported that they do not consider him to be dangerous because of a mental disease. On January 27, 1993, a hearing was held to determine whether Defendant should be released to the public.

## II. ANALYSIS

Under Section 4243(c) of Title 18, United States Code, Defendant's burden at a "dangerousness" hearing is to prove that his release will not create a substantial risk of bodily injury to another person or of serious damage to another's property because of a mental disease or defect. Because the crimes for which Defendant was indicted involve a substantial risk of bodily injury, the standard of proof in this case is by "clear and convincing evidence." 18 U.S.C. § 4243(d). That standard has been defined by the Supreme Court in a different setting as proof that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990). This definition is appropriate for use in determining whether a defendant who has been found not guilty of a violent crime only by reason of insanity should be released to the public under Section 4243 of Title 18, United States Code. *Cf. In re Medrano,* 956 F.2d 101, 102 (5th Cir.1992) (adopting the same definition of "clear and convincing evidence" in a proceeding for attorney disbarment).

Applying that definition, this Court cannot declare a clear belief or conviction, without hesitation, that Defendant is no longer dangerous because of his mental illness. Two primary reasons underlie this decision: (1) Defendant was not reevaluated for mental illness following an acknowledged violent episode at Springfield mental facility; and (2) Defendant has demonstrated no likelihood of future compliance with the medication on which remission from his mental illness depends.

### A. Reevaluation

Defendant was diagnosed in 1991 to have been suffering from paranoid schizophrenia at the time of the offenses for which he was indicted. According to the testimony of Dr.

Christina A. Pietz, the evaluating psychologist from the Springfield facility, Defendant's disease is lifelong and can be controlled only with the proper dosage of one of several psychotropic medications. She testified that experimentation with different medications and dosages is often necessary before a correct combination is found to maintain a stable remission.

In her testimony, Dr. Pietz offered the opinion that Defendant continues to be dangerous and that his release would put the community at risk of harm. His dangerousness, however, is the result not of mental illness, according to Dr. Pietz, but rather of an antisocial personality. Dr. Pietz's opinion is that it was Defendant's antisocial personality that caused him to engage in recent violent behavior. Although no criminal charges have been brought against Defendant for an alleged sexual assault of a Springfield inmate that occurred on October 19, 1992, Dr. Pietz's testimony at the hearing acknowledged Defendant's involvement in the incident.

Defendant's evaluation for mental illness took place twelve days prior to the violent episode. Following the incident, Defendant was not reevaluated. On cross-examination, Dr. Pietz confirmed that Defendant's initial diagnosis of schizophrenia was based in part on similar violent episodes. Her report details violent behavior that occurred prior to his being placed on psychotropic medication; the behavior includes one incident of attempted sexual assault that took place in January 1992. The section of Dr. Pietz's report, dated October 7, 1992, that surveys Defendant's history of violence concludes: "[A]fter being placed on psychotropic medication, his behavior was without incident." That statement is no longer accurate. Defendant's recurring violent behavior might indicate either an erroneous evaluation of remission or a reemergence of the mental illness on his currently prescribed dosage of medication. In sum, the recent violent episode similar to behavior on which Defendant's original diagnosis of mental illness was predicated, combined with Springfield's failure to reevaluate Defendant following the incident, precludes the Court from saying with the required certainty that Defendant is no longer a danger to the community because of his mental illness.

*B. Likelihood of Compliance with Medication*

Even if Defendant had been able to show by clear and convincing evidence that his mental illness is presently in stable remission, the inquiry would not end. The language of Section 4243(d) compels the Court to consider the likelihood of future compliance with medication as a factor in deciding whether to authorize Defendant's release under the circumstances of this case. The statute reads as follows:

[A] person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage, has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect.

18 U.S.C. § 4243(d).

Note that the statute does not oblige a defendant to show that he or she is not presently suffering from mental disease. Rather, it requires a defendant to prove that his or her release would not create a substantial danger *due to* mental disease. In this case, Defendant's disease of paranoid schizophrenia is ongoing. Remission from the disease is intimately linked with medication; remission alone, therefore, is not enough. Unless Defendant maintains the remission, he continues to be a substantial danger to the community because of the ongoing disease. Accordingly, Defendant must offer clear and convincing evidence that compliance with the medication on which his remission depends is at least likely for the Court to authorize his release under Section 4243. *See United States v. Craig*, 1992 WL 129791, 1992 U.S.App. LEXIS 24,194 (9th Cir.1992) (denying a paranoid schizophrenic acquittee's release under Section 4243 in part because of unlikely outpatient compliance with medication); *see also United States v.*

*Burns,* 812 F.Supp. 190, 193–94 (D.Kan.1993) (same).

Defendant argues that such a requirement would be unconstitutional under the recent decision in *Foucha v. Louisiana,* —— U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). The Court disagrees. In *Foucha,* the Supreme Court struck down a Louisiana statute requiring that an insanity acquittee be committed to a mental institution unless the acquittee could prove that he or she were no longer dangerous for any reason. Commitment was required under the statute even if the acquittee were judged to be presently sane. The Court held the statute to be an unconstitutional violation of the right to due process.[1] *Id.* at ——, 112 S.Ct. at 1787–88.

In so holding, the Court refused to allow the State "to perpetuate Foucha's confinement at [a mental facility] on the basis of his antisocial personality which, as evidenced by his conduct at the facility, the court found rendered him a danger to himself or others." *Id.* at ——, 112 S.Ct. at 1784. It is this and similar language on which Defendant relies to argue that he must be released on a clear and convincing showing of remission alone. Although the case addresses only the constitutionality of the Louisiana statute, Defendant contends that it stands for the broader proposition that the Government may not incarcerate in a mental facility any insanity acquittee who is evaluated by the medical staff to be presently sane.

This Court finds nothing in the holding of *Foucha* to support such a generalization.[2] Indeed, Justice O'Connor's lone concurrence in the 5–4 decision expressly refutes Defendant's position. She wrote separately "to emphasize that the Court's opinion addresses only the specific statutory scheme before [it], which broadly permits indefinite confinement of sane insanity acquittees in psychiatric facilities." *Id.* at ——, 112 S.Ct. at 1789 (O'Connor, J., concurring). She continues:

I do not understand the Court to hold that Louisiana may never confine dangerous insanity acquittees after they regain mental health.... It might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if, unlike the situation in this case, the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness.

*Id.*

Requiring likely post-release compliance with medication by an insanity acquittee under the circumstances of this case falls squarely within the realm that Justice O'Connor anticipated to be constitutionally acceptable. Due process in the context of commitment to a mental facility requires "that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at ——, 112 S.Ct. at 1785. In this case, Defendant was sent to Springfield to be treated and evaluated for mental illness. His confinement also served to protect the public from further illegal actions caused by his illness. It is eminently reasonable under these circumstances to require that he remain confined until he can provide some assurance that he is able and willing to maintain a remission from his disease should he be released to live among the public again.

If no such assurance were required, federal mental facilities risk becoming revolving doors to insanity acquittees with ongoing mental illnesses held in check by medication. According to Dr. Pietz's testimony and report in this case, future noncompliance with medication would likely result in Defendant's committing another act of violence. Because Defendant's disease could be shown not to be in remission at the time of the incident, he would be able to sustain a successful plea of insanity. Afterwards, Defendant would be

---

**1.** Only three other Justices joined Part III of Justice White's majority opinion declaring the statute to be also a violation of the Equal Protection Clause.

**2.** The facts of *Foucha* certainly do not require a similar result in this case. In *Foucha,* the defendant had been diagnosed to have a drug-induced

psychosis; the illness is described as a "temporary condition" from which he had fully recovered at the time of his Section 4243 hearing. *Foucha,* at ——, 112 S.Ct. at 1782. In contrast, Jackson is the victim of a lifelong mental illness whose remission is wholly dependent on permanent compliance with prescribed medication.

returned to a mental facility only to be released again after inpatient stabilization with medication. In that circle of events, no interest is served.

Turning to the evidence presented in this case, the Court finds it unlikely that Defendant would comply with his medication on release. Dr. Pietz testified at the hearing to previous reports that Defendant may have been noncompliant with treatment in the past. In her report, she describes Defendant as "not willing to admit a need for continued psychiatric care which would include psychotropic medication." Rep. at 4. During his evaluation interview, Defendant was "unable to understand the relationship of the lessening of his psychotic symptoms to his taking medication." Rep. at 4. From the evidence, the Court cannot conclude with confidence that Defendant would be willing or even able to comply with medication at this time without further therapy and supervision on an inpatient basis.

### III. CONCLUSION

For the reasons given above, Defendant did not meet his burden of proving by clear and convincing evidence that he no longer poses a substantial threat to persons or to property because of his mental illness. He is hereby committed to the custody of the Attorney General for further action consistent with Section 4243(e) of Title 18, United States Code.

SO ORDERED.