THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY PARROTT, Defendant-Appellant.

Third District No. 3—92—0178

Opinion filed April 30, 1993.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Stanley Parrott was committed to the Department of Corrections in 1975 under the provisions of the Sexually Dangerous Persons Act (the Act) (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*). In 1977, after the Illinois Supreme Court held that the standard of proof necessary for commitment under the Act was proof beyond a reasonable doubt (see *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28), the State filed a second petition to commit the defendant. At the hearing on this petition, the parties stipulated to admission of the evidence presented at the 1975 hearing, and the court found the defendant to be sexually dangerous beyond a reasonable doubt. This finding was affirmed on appeal to this court. *People v. Parrott* (1982), 108 Ill. App. 3d 222, 438 N.E.2d 313.

On April 26, 1991, the trial court granted the defendant's petition for conditional release pursuant to section 9 of the Act (Ill. Rev. Stat. 1991, ch. 38, par. 105—9). Section 9 provides that where a patient no longer appears to be dangerous but it cannot be determined with certainty that he has fully recovered, the court shall release him subject to such conditions and supervision as are necessary to protect the public.

On October 18, 1991, the State filed a petition to revoke defendant's conditional release. The State alleged that defendant had violated a condition of his release by failing to avoid unsupervised con-

tact with children or adolescents. After a hearing on February 14, 1991, the trial court revoked the defendant's conditional release and remanded him to the custody of the Department of Corrections on February 18. On appeal, defendant contends that he was denied due process and equal protection of the law and that the trial court erred in admitting certain evidence. We affirm.

The first witness to testify at the hearing was five-year-old S.H. S.H. identified the defendant as the man who had approached her and her 11-year-old aunt, S.C., as they were playing and showed them "dirty" pictures. The defendant asked if they wanted one of the photos and showed them one picture which depicted nude people having sex. S.H. and S.C. began walking away, toward their house, and the defendant followed them. Once they reached the house, the children began yelling because they had no keys, and the defendant walked away. The defendant was carrying a blue bag which S.H. identified as exhibit 1. The police were summoned, and they drove the girls around the neighborhood in separate vehicles. Defendant was identified and arrested as he was walking along the sidewalk.

On cross-examination, S.H. stated that she only saw one picture and it had fallen out of defendant's bag. S.C. picked up the picture and returned it to the defendant, who said thank you.

Mary Miceli, a Chicago police officer, was the next witness called on behalf of the State. Officer Miceli testified that on October 12, 1991, at approximately 2:30 p.m., she responded to a call regarding a disturbance. After talking to S.H. and S.C. and determining the nature of the complaint, each girl was placed in a separate squad car and was driven around the neighborhood. Shortly thereafter defendant was observed walking on the sidewalk carrying a blue bag which the girls had earlier described. Miceli identified the defendant as the man placed under arrest shortly after the incident. Over objection, Miceli identified exhibit 1 as the blue bag the defendant was carrying. Also over objection, Miceli identified the contents of the bag, which included sexually explicit magazines and photographs, candy bars and condoms.

The next witness to testify was 12-year-old S.C., who was 11 years old at the time of the incident. S.C. was speech and hearing impaired, so an interpreter was sworn in to assist with the testimony. According to S.C., she and S.H. were playing hide-and-go-seek when a man approached and tried to talk to them. The man asked S.C. if she wanted to have sex and showed her some "dirty" pictures which he threw on the ground. S.C. stated that she picked the pictures up and returned them to the man and began to run home. S.C. also claimed

the man touched her breast. She identified exhibit 1 as the blue bag the man had been carrying. Two police cars responded to the girls' complaint, and the defendant was identified and arrested as they drove through the neighborhood. S.C. stated that the man wearing orange sitting in the courtroom was the man involved, but she was too afraid to point him out.

On cross-examination, S.C. stated that only one photograph was involved and she did not know why she had picked it up and returned it to the man. S.C. agreed that the defendant looked scared when she returned the photo. S.C. stated that the defendant offered her money for sex, although she acknowledged she had difficulty hearing what the defendant said. Following S.C.'s testimony, the State rested its case.

Defendant Stanley Parrott testified on his own behalf. Parrott stated that following his conditional release, he lived in a halfway house for two months and later moved into a hotel. During this time he worked for a telemarketing company and he continued to receive counseling. At approximately 2 p.m. on October 12, defendant passed by a high school as he was walking to a friend's house. Defendant reached into his shoulder bag to pull out a pack of cigarettes and four or five pictures from an adult magazine fell out. He stepped back to retrieve the pictures, noticed one was missing, and began looking for it. As he was looking through his bag, two girls walked by and the older girl picked up the lost picture and returned it to the defendant. Defendant became scared because he knew he was on conditional release. He offered the girl a quarter for being honest and thanked her, hoping that if he offered her some money she would be less likely to say anything to anyone. Defendant denied touching the girl's chest and he also denied following the girls.

On cross-examination, over objection by defense counsel, the State was permitted to question the defendant about the contents of the shoulder bag, which included several adult magazines, candy bars, condoms, a sketch pad and a diary. Defendant stated that he had intended to trade the pictures and magazines with his friend. After brief redirect examination, the defense rested its case.

Following closing arguments, the court took the matter under advisement. On February 18, 1992, the court revoked defendant's conditional release and remanded the defendant to the custody of the Department of Corrections.

Defendant first contends that the revocation and recommitment provision of the Sexually Dangerous Persons Act violates due process because it allows the court to revoke defendant's conditional release

without a finding that the defendant is currently sexually dangerous. We disagree. Section 9 of the Act provides:

"§9. An application in writing setting forth facts showing that such sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. *** If the patient is found to be no longer dangerous, the court shall order that he be discharged. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public. In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the Unified Code of Corrections under the terms of the original commitment." Ill. Rev. Stat. 1991, ch. 38, par. 105—9.

■ We believe that the argument defendant raises here is foreclosed by the supreme court's decision in *People v. Studdard* (1972), 51 Ill. 2d 190, 281 N.E.2d 678. The *Studdard* court stated:

"The defendant argues that his conditional release could not have been revoked without the introduction of psychiatric testimony that he was sexually dangerous. This was not a proceeding to have the defendant declared to be sexually dangerous. *** The defendant had previously been declared to be sexually dangerous and had been committed and later conditionally discharged. He had not been discharged as recovered as provided for in section 9 of the Act. Sections 9 and 10 of the Act provide for a conditional release of a person who has been committed when, although that person appears no longer to be sexually dangerous, it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered. These sections also provide that in the event the person conditionally released violates any of the conditions of such order, 'the court shall revoke such conditional release and recommit the person under the terms of the original commitment.' There is no requirement under these sections that any psychiatric testimony be offered at this stage to show that the person is sexually dangerous. That had previously been determined at the original commitment. The determination to be made at this stage is whether the person violated any of the conditions of

the conditional release order. If it is found that he has violated any condition, then the statute is mandatory that the court recommit him under the terms of the original commitment.

Also, the failure to require psychiatric testimony as to the defendant's condition at this stage does not deprive him of a constitutional right as he now contends. *If he in fact feels that he is no longer sexually dangerous, section 9 provides that he may file an application for discharge as recovered.* On the filing of such an application the Director is required to file with the court a 'socio-psychiatric report' concerning the person. A hearing is then required to be held on the application, at which time the report so filed and any other relevant information submitted by or on behalf of the applicant will be considered. *By virtue of this section the person is afforded an opportunity at any stage, including the recommitment stage, to file his application for discharge and has the benefit of any psychiatric or other relevant evidence he may wish to have the court consider."* (Emphasis added.) *Studdard*, 51 Ill. 2d at 194-95, 281 N.E.2d at 680.

Notwithstanding *Studdard*, defendant contends that the decision by the United States Supreme Court in *Foucha v. Louisiana* (1992), 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780, is controlling. We find, however, that *Foucha* is distinguishable from this case. In *Foucha*, the defendant was found not guilty by reason of insanity under Louisiana law and was committed to a mental institution. Defendant was later recommended for conditional discharge based on a finding that he was not mentally ill. Subsequent psychiatric testimony indicated that while the defendant was not mentally ill, he had an antisocial personality and could present a danger to himself or others if released. Defendant's discharge was denied on the basis that he was dangerous to himself and others.

The Supreme Court held that the Louisiana statute violated due process because it allowed an insanity acquittee to be committed to a mental institution until he was able to demonstrate that he was not dangerous, even though he did not suffer from any mental illness. An insanity acquittee could only be held, according to the Court, so long as he was *both* mentally ill and dangerous.

In *Foucha* the State did not contend that the defendant was mentally ill at the time of the discharge hearing. Accordingly, the Court held that it was impermissible to predicate the defendant's continued confinement solely on the basis of dangerousness. In this case, when the defendant was initially committed in 1975 there was a finding

that defendant was a sexually dangerous person in that he suffered from a mental disorder, coupled with demonstrated propensities toward acts of sexual assault or sexual molestation of children. (See Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01.) At a subsequent hearing in 1977, defendant was found to be sexually dangerous beyond a reasonable doubt. The conditional release granted to defendant in April of 1991 did *not* constitute a finding that defendant was no longer sexually dangerous. "A sexually dangerous person who has been conditionally released retains his status as sexually dangerous until a trial court grants a petition for a discharge." (*People v. Cooper* (1989), 132 Ill. 2d 347, 358, 547 N.E.2d 449, 455.) Unlike *Foucha*, there has never been a determination that the defendant in this case was not mentally ill or not dangerous. Defendant's continuing status as a sexually dangerous person obviated any need for a finding of current dangerousness at the revocation hearing.

In addition, since the State was not required to again prove that the defendant was sexually dangerous, the defendant's related argument that clear and convincing evidence of current dangerousness was required also fails. We reiterate that defendant has already been shown to be sexually dangerous beyond a reasonable doubt and no change in that condition has been established. As the court noted in *Studdard*, the defendant had the opportunity to file an application for discharge at any time, including the recommitment stage. We find no denial of due process.

Defendant also maintains that revoking his conditional release without a showing of present dangerousness by clear and convincing evidence violated his right to equal protection of the law. Defendant notes that other groups of mentally ill persons, such as those found not guilty by reason of insanity, those unfit to stand trial, or persons subject to involuntary commitment, must be shown to be presently mentally ill and dangerous by clear and convincing evidence before they can be committed. In contrast, a violation of the terms of defendant's conditional release need only be proved by a preponderance of the evidence.

■ Defendant is not, however, being treated more harshly than other groups of mentally ill persons. The defendant was not recommitted to the Department of Corrections upon a showing by a preponderance of the evidence that he was sexually dangerous. He was recommitted because he had previously been found sexually dangerous beyond a reasonable doubt and he had never been found to be no longer dangerous. Because defendant's recommitment rests upon a finding of sexual dangerousness beyond a reasonable doubt, he was

not more harshly treated than other persons whose commitment rests upon a finding of mental illness by clear and convincing evidence. Moreover, we note that our supreme court held in *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28, that no equal protection violation resulted from the difference between commitment proceedings under the Sexually Dangerous Persons Act and commitment under what was then known as the Mental Health Code (Ill. Rev. Stat. 1971, ch. 91½, par. 1—1 *et seq.*, repealed by Pub. Act 80—1414, eff. January 1, 1979). The court stated that a sexually dangerous person "creates different societal problems, and his past conduct is different in degree and kind from the conduct of persons in the larger, more inclusive class defined under the Mental Health Code." *Pembrock*, 62 Ill. 2d at 322, 342 N.E.2d at 30.

Defendant further contends that his equal protection rights were violated because the Act makes recommitment mandatory upon a finding that he has violated a condition of his release. (Ill. Rev. Stat. 1991, ch. 38, par. 105—9; *Cooper*, 132 Ill. 2d 347, 547 N.E.2d 449.) Defendant points out that in cases where an individual has been convicted of a criminal offense and subsequently violates a condition of probation, the trial court "may continue him on the existing sentence, with or without modifying or enlarging the conditions" or impose any other sentence available at the time of initial sentencing. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—6—4.) Defendant argues that he was therefore treated more harshly than a criminal defendant.

■ A sentence of probation and conditional release under the Act are fundamentally different. (*Cooper*, 132 Ill. 2d 347, 547 N.E.2d 449.) Probation is a sentence imposed for a criminal conviction, while conditional release is one aspect of the treatment of sexually dangerous persons. (*Cooper*, 132 Ill. 2d 347, 547 N.E.2d 449.) Defendants on probation are not mentally ill, nor do they generally represent a significant threat to the public (see Ill. Rev. Stat. 1991, ch. 38, par. 1005—6—1 (court shall impose a sentence of probation unless imprisonment is necessary for the protection of the public)). Sexually dangerous persons on conditional release, however, are both mentally disturbed and potentially dangerous. The purpose of conditional release is to determine whether a person who no longer appears to be sexually dangerous is able to function in a noninstitutional setting. Where, as in this case, the defendant's acts demonstrate that he has not recovered, the Act's twin aims of treatment and protection of the public mandate recommitment. While the equal protection clause requires equal treatment for similarly situated groups of persons, it does not prohibit treating different classes of people in different ways. (*People v. Eck-*

*hardt* (1989), 127 Ill. 2d 146, 535 N.E.2d 847; *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215.) Given the great differences between persons sentenced to probation and those on conditional release, we find no equal protection violation.

Finally, defendant contends that the trial court erred in allowing the State to introduce the contents of the blue shoulder bag into evidence. Defendant argues that the bag's contents, which were not seen by the children, were irrelevant and prejudicial.

 Evidence is relevant if it tends to make a proposition at issue either more or less probable. (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 462 N.E.2d 959.) The issue in this case was whether the defendant willfully violated a condition of his release which prohibited unsupervised contact with children or adolescents. The defendant's testimony concerning the events of October 12, 1991, was clearly intended to show that his contact with the two girls was innocent and inadvertent. The trial court found that the sexually explicit materials found in the defendant's bag circumstantially supported the testimony of the girls and tended to establish the defendant's state of mind. We agree that the pictures and magazines, one of which is titled "Tender Shavers" and depicts women in a manner apparently intended to resemble prepubescent girls, were at least marginally relevant to the defendant's state of mind. (See *People v. Taggart* (1992), 233 Ill. App. 3d 530, 599 N.E.2d 501 (books describing sexual encounters between older males and young boys were relevant to allegations of sexual misconduct between adult defendant and young boys); see also *People v. Paull* (1988), 176 Ill. App. 3d 960, 531 N.E.2d 1008 (no abuse of discretion in admitting nude photographs and books about incest in prosecution for aggravated incest).) It is the trial court's function to balance the probative value and prejudicial effect of the evidence, and its decision will not be disturbed absent an abuse of discretion. (*Rachel*, 123 Ill. App. 3d 600, 462 N.E.2d 959.) We find no abuse of discretion here.

With regard to the other items in the bag, such as the sketch pad, diary, candy bars and condoms, although they were largely irrelevant, their prejudicial effect, if any, was minimal. We find that defendant was not deprived of a fair hearing by admission of these items.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

McCUSKEY, P.J., and LYTTON, J., concur.