**STATE of Missouri, Respondent,**

v.

**Timothy Jack TOOLEY, Appellant.**

No. 75961.

Supreme Court of Missouri,
En Banc.

April 26, 1994.

Rehearing Denied May 26, 1994.

Joe Zuzul, Public Defender, Nevada, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Clate J. Baker, Asst. Atty. Gen., Springfield, for respondent.

PRICE, Judge.

Timothy Tooley was found not guilty by reason of insanity of the crime of sodomy in 1984. This case arises out of his request for an unconditional discharge from his commitment to a state mental institution. On May 26, 1993, the trial court denied Tooley's request, finding that he was suffering from a mental disease or defect and that he did not meet his burden to entitle himself to a release pursuant to § 552.040.6(6), RSMo Supp. 1992.

Tooley appeals this decision, citing *Foucha v. Louisiana,* — U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). He argues that § 552.040.6(6) violates due process by placing the burden of persuasion upon the person seeking release, rather than upon the state, to show by clear and convincing evidence that he or she does not have a mental disease or defect. We find that it is constitutionally permissible for § 552.040.6(6) to place the burden of proof upon Tooley.

## I.

In 1984, Timothy Tooley pleaded not guilty by reason of mental disease or defect to the charge of deviate sexual intercourse with a girl to whom he was not married and who was less than fourteen years old. The court accepted this plea, and he was committed to the custody of the Department of Mental Health. Beginning in October 1985, he had a series of conditional releases to Wheaton Manor, a group home.

In April 1992, a Petition for Unconditional Release was filed on Tooley's behalf. On May 1 and May 5, 1992, respectively, the Vernon County Prosecuting Attorney and the Department of Mental Health (the State) filed objections to Tooley's unconditional release.

In the summer of 1992, Tooley voluntarily readmitted himself to Fulton State Hospital for an evaluation after an incident with a thirteen-year-old girl. Tooley had been sitting on a bench watching the girl and eventually had hugged her repeatedly until she yelled for him to stop. This incident was similar to the one which caused his 1984 commitment, except that in this incident there was no sexual contact and Tooley was taking preventive medication. After a thirty-day evaluation, he was again conditionally released.

On October 23, 1992, the court ordered a mental examination. On January 19, 1993, a hearing was held on Tooley's petition for unconditional release. Dr. Harold Robb was the psychiatrist who performed Tooley's mental examination. He also had been Tooley's treating psychiatrist at one time. At the hearing, he testified that Tooley did suffer from a mental disease and that he did not support Tooley's unconditional release.

At the hearing, Yvonne Cordeiro, the forensic case monitor for the Department of Mental Health, testified that Tooley had engaged in inappropriate behavior at the group home. In her opinion, Tooley did not comprehend the inappropriateness of his behavior. After the hearing, the court took the case under advisement.

On January 22, 1993, the Prosecuting Attorney and the Department of Mental Health jointly moved for a rehearing based on Dr. Robb's testimony that Tooley was being treated by another physician. The court treated the motion as one to reopen the case for additional evidence, and granted the motion over Tooley's objection. On May 11, 1993, the state presented the testimony of Charles Clinton Cheely, the Program Director of the Community Psychiatric Rehabilitation Program at Clark Community Mental Health Center. Cheely diagnosed Tooley with bipolar disorder, a mental illness. On May 26, 1993, the court entered an order denying the Petition for Unconditional Release, stating that Tooley was suffering from a mental disease or defect and did not meet his burden to entitle himself to a release.[1]

---

1. Because neither party requested specific find-   ings of fact prior to final submission of the case,

Tooley remains on conditional release at the residential care facility. He works at a Sheltered Workshop and at a barbershop for a nominal salary. At the residential care facility, he is responsible for his own room and for cooking meals two to three times a week. He complains of boredom, and wants an outdoor job where he could make more money.[2]

As this case concerns the validity of a statute of this state, this Court has exclusive jurisdiction. *Mo. Const. art. V, § 3.* Before this Court, Tooley raises two arguments: first, that the trial court erred in placing the burden of persuasion upon him; and second, that the trial court lacked authority to order a rehearing.

## II.

### A.

An individual may be involuntarily committed to a mental institution in a civil proceeding if the state proves by clear and convincing evidence that (1) the person sought to be committed is mentally ill, and (2) he or she requires hospitalization for his or her own welfare or the protection of others. *Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979). However, a state may commit a person without satisfying the *Addington* requirements when the person is found not guilty of a crime by reason of insanity. *Jones v. United States,* 463 U.S. 354, 363–64, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983). A verdict of not guilty by reason of insanity establishes that the person committed a criminal act and that he or she committed the act because of mental illness. *Id.* at 363, 103 S.Ct. at 3049. The Court stated that it was neither unreasonable nor unconstitutional for Congress to make the determination that these findings were adequate to hospitalize the acquittee as a "dangerous and mentally ill person". *Id.* at 364, 103 S.Ct. at 3049.

Likewise, in *Jones* the Court stated that it was not unreasonable for Congress to deter-

mine that an insanity acquittal supports an inference of continuing mental illness. *Id.* at 366, 103 S.Ct. at 3050. "It comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." *Id.* Finally, the Court held that:

> [W]hen a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.

*Id.* at 370, 103 S.Ct. at 3053.

### B.

In *Foucha v. Louisiana,* —— U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), Terry Foucha had been found not guilty by reason of insanity and committed to a mental institution. Four years later, a panel from the state institution in which he was confined reported that there had been no evidence of mental illness since his commitment and recommended his conditional discharge. The applicable Louisiana statute placed the burden upon the insanity acquittee to prove that he or she was not dangerous. If the acquittee was found dangerous, he or she could be returned to the mental institution, whether or not then mentally ill. Despite the panel's recommendation, the trial court ruled Foucha was dangerous to himself and others and ordered him returned to the institution. The Louisiana Supreme Court affirmed, holding that Foucha had not carried his statutory burden to prove himself not dangerous.

The U.S. Supreme Court reversed, basing its decision on the fact that the state of Louisiana did not contend that Foucha was mentally ill at the time of the trial court's hearing, but instead sought to perpetuate his confinement on the basis of his antisocial personality, an untreatable condition that is

we consider all factual issues as being decided in accordance with the result reached by the trial court. *Rule 73.01(a)(3).*

**2.** The parties did not address whether the degree of dangerousness necessary to impose full commitment might differ from the degree of dangerousness required to support a conditional release.

not a mental disease. *Id.* at ——, ——, 112 S.Ct. at 1782, 1784. Since the state did not contend that Foucha was mentally ill at the time of the hearing, the "basis for holding [him] in a psychiatric facility as an insanity acquittee [had] disappeared, and the State [was] no longer entitled to hold him on that basis." *Id.* at ——, 112 S.Ct. at 1784.

### III.

■ Tooley asserts that the Missouri statute governing unconditional release is unconstitutional under *Foucha*, as it places the burden of persuasion upon the person seeking release. Section 552.040.6(6) states, in relevant part:

> The burden of persuasion for any person committed to a mental health facility under the provisions of this section upon acquittal on the grounds of mental disease or defect excluding responsibility for a violent crime against another person for violations of [sections omitted][3] ..., shall be on the party seeking unconditional release to prove by a clear and convincing evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others.

Tooley is correct that § 552.040.6(6) places the burden of proof upon insanity acquittees to prove that they no longer suffer from a mental disease or defect rendering them dangerous to themselves or others. Tooley is

incorrect, however, in asserting that *Foucha* applies here.

In *Foucha*, the state already had acknowledged that Terry Foucha no longer suffered from mental disease or defect. Therefore, the presumption of continuing mental illness found appropriate in *Jones v. United States*, 463 U.S. 354, 366, 103 S.Ct. 3043, 3050, 77 L.Ed.2d 694 (1983), no longer existed.

Here, the state has never acknowledged that Tooley is no longer mentally ill. In fact, the state presented evidence and argued to the contrary. So long as the *Jones* presumption of continuing mental illness has not been broken following an acquittal by reason of insanity, the burden of proof need not shift to the state.[4]

Other courts have resolved this issue similarly. In *Hearne v. United States*, 631 A.2d 52 (D.C.Ct.App.1993), the District of Columbia statute explicitly placed the burden of proof upon the insanity acquittee. *Id.* at 52–53. Because it was essentially undisputed that the person seeking release would be a danger to society, the only issue in the case was whether he was still mentally ill. *Id.* at 53 n.2. The District of Columbia Court of Appeals found "no merit" in the contention that *Foucha* rendered the statute unconstitutional. The court stated:

> The *Foucha* opinion, however, proceeds from the postulate of a conceded recovery from mental illness. We see nothing in the *Foucha* ruling which mandates a ruling that the statutory placement of the burden

---

**3.** The crime of which Tooley was acquitted was a violation of one of the statutory provisions enumerated in the section as violent crimes against other persons.

**4.** See *Foucha*, —— U.S. at —— n. 4, 112 S.Ct. at 1783 n. 4. We do not reach the issue of whether it would be constitutionally permissible to confine a sane person based on dangerousness alone. Justice O'Connor did indicate in *Foucha* that this may be constitutional:

> I do not understand the Court to hold that Louisiana may never confine dangerous insanity acquittees after they regain mental health.... It might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if, unlike the situation in this case, the nature and duration of detention were tailored to reflect pressing public

safety concerns related to the acquittee's continuing dangerousness.

*Foucha*, —— U.S. at ——, 112 S.Ct. at 1789 (O'Connor, J., concurring); *see also Matter of Hayes*, 111 N.C.App. 384, 432 S.E.2d 862, 864 (1993) (holding that a party's *Foucha* argument was moot because the legislature subsequently had amended the statute to require a person seeking release to prove either that he or she was not mentally ill or that he or she was not dangerous, but not both), *motion to dismiss for failure to state a constitutional claim allowed*, 335 N.C. 173, 436 S.E.2d 376 (1993). But see *Foucha*, —— U.S. at ——, 112 S.Ct. at 1806 (Thomas, J., dissenting); *Application of Noel*, 17 Kan.App.2d 303, 838 P.2d 336 (1992) (invalidating under *Foucha* a statute placing the burden of proof upon the patient to prove he or she was not dangerous).

of proof on the insanity acquittee to demonstrate his right to release in the first instance is unconstitutional.

*Id.* at 53.

Similarly, *U.S. v. Jackson,* 815 F.Supp. 195 (N.D.Tex.1993), rejected a challenge to 18 U.S.C. § 4243(c), which defined a defendant's burden of proof at a "dangerousness" hearing to be "to prove that his release will not create a substantial risk of bodily injury to another person or of serious damage to another's property because of a mental disease or defect." *Id.* at 196. As observed by the court, this statute requires a defendant to prove lack of dangerousness, not absence of mental disease. *Id.* at 197. The *Jackson* court found the statute valid, citing Justice O'Connor's concurrence in *Foucha* as support.[5] *Id.* at 198.

The Supreme Court of Georgia also held recently that a statutory presumption of continued insanity was not unconstitutional. *Nagel v. State,* 262 Ga. 888, 427 S.E.2d 490, 492 (1993). At the release hearing, the insanity acquittee had the burden of proving he was no longer insane. The Georgia court merely declared the statute a reasonable legislative judgment, asserting that this was in keeping both with *Jones* and with O'Connor's concurrence in *Foucha. Id.* 427 S.E.2d at 491 (quoting *Jones,* 463 U.S. at 364, 103 S.Ct. at 3049).

Finally, the Appellate Division of the New York Supreme Court considered an appeal by an individual contending that, after *Foucha,* he could not be held in a mental institution solely upon the basis of his dangerousness when his mental disease was in remission. Noting that it was examining the evidence "to determine if petitioner has established his entitlement to release under this statute", the court found that the petitioner was mentally ill and in need of further retention for treatment. The court further stated: "This disposition is not precluded by *Foucha*

*v. Louisiana ...* because this case is distinguishable in that petitioner is mentally ill, whereas in *Foucha* the petitioner was not." *Mental Hygiene Legal Services v. Rhodes,* 195 A.D.2d 160, 606 N.Y.S.2d 834, 835–36 (1994).

Two of the cases cited by Tooley in support of his argument concern cases of civil commitment and not cases where a person was committed after being found not guilty by reason of insanity. *People v. Parrott,* 244 Ill.App.3d 424, 184 Ill.Dec. 278, 613 N.E.2d 305 (1993); *Lidberg v. Steffen,* 492 N.W.2d 560 (Minn.Ct.App.1992). These cases are inapposite, as an insanity acquittee's assertion and proof of his own guilt are the very principles underlying the *Jones* decision, which we follow here. Another case cited by Tooley, *Reese v. United States,* 614 A.2d 506 (D.C.Ct.App.1992), also is inapposite, as it involved the validity of a state's revocation of a conditional release. Tooley also cites *Levine v. Torvik,* 986 F.2d 1506 (6th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993), which is distinguishable because the Ohio statute in question places the burden of proof upon the state, so there could be no due process argument on that issue.[6]

## IV.

▋ Finally, Tooley raises two additional constitutional issues in his brief without mention in the Points Relied On. He argues that § 552.040 fails to provide two necessary factors allegedly mandated by the recent U.S. Supreme Court case of *Medina v. California,* —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), *reh'g denied,* —— U.S. ——, 113 S.Ct. 19, 120 L.Ed.2d 946 (1992). First, § 552.040 does not guarantee assistance of appointed counsel. Second, it makes no provision for state-funded psychiatric examinations by independent mental health profes-

---

5. As in the present case, the statute in *Jackson* requires the insanity acquittee to meet his or her burden of proof by "clear and convincing evidence". The parties have not specifically addressed this issue, and we reserve ruling upon whether this standard is constitutionally appropriate.

6. Tooley cites two remaining cases, *Styles v. State,* 838 S.W.2d 10 (Mo.App.1992), and *State v. Roberts,* 620 So.2d 824 (La.1993). *Styles* currently is before this Court as No. 75880. *Roberts* is a one-paragraph decision in which the Louisiana Supreme Court merely remands the case for a rehearing in light of *Foucha.* Thus, it offers no guidance.

sionals. We do not address these issues because Tooley has not claimed that he was injured by these alleged omissions and any opinion by this Court would be merely advisory. In addition, Tooley did not raise these issues at the earliest opportunity or in his Points Relied On, and, accordingly, the arguments have been waived.

### V.

Tooley also alleges the trial court's allowance of a rehearing was contrary to the procedural provisions of § 552.040. First, Tooley alleges the rehearing was improper because § 552.040 does not expressly provide for a rehearing. Tooley is correct in asserting that §§ 552.040.3 and 552.040.8 state that the procedures detailed in § 552.040 are to be the exclusive procedures followed in determining whether a party is entitled to unconditional release. However, the court never entered a final order after the January 19 hearing, so the case was never closed. Instead, the motion was treated by the court as a motion to reopen the case for additional evidence. A trial court has wide discretion to reopen a case for further evidence. *State v. Sykes*, 628 S.W.2d 653, 657 (Mo.1982); *State v. Guelker*, 548 S.W.2d 521, 526 (Mo. banc 1976), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977), *reh'g denied*, 434 U.S. 882, 98 S.Ct. 248, 54 L.Ed.2d 167 (1977). We do not find an abuse of this discretion.

Second, Tooley argues the "rehearing" was improper because he did not consent to a hearing outside the sixty-day period provided in § 552.040.4.[7] As the last objection to the proposed release was filed on May 5, 1992, the sixty days elapsed on July 4, 1992. However, the hearing did not begin initially until January 19, 1993, over six months after the expiration of the sixty days. This was at least partly due to Tooley's own request for a continuance on December 23, 1992. Therefore, Tooley's argument that the reopened hearing was invalid because held outside the sixty days seems superfluous. Even were it not superfluous, two Missouri cases have

held that the sixty-day period is directory, rather than mandatory. *State v. Will*, 753 S.W.2d 333, 334 (Mo.App.1988); *State v. Hoover*, 719 S.W.2d 812, 818 (Mo.App.1986). "It is sufficient if the compliance with procedure, albeit tardy, substantially subserves the statutory purpose without jeopardy to any substantial right." *Hoover*, 719 S.W.2d at 818. This point is denied.

### VI.

The judgment is affirmed.

All concur.

---

**7.** § 552.040.4 provides that a hearing shall be held within sixty days of the time when a written