STATE of Missouri, Respondent,

v.

Frederick L. REVELS, Appellant.

No. SC 81694.

Supreme Court of Missouri,
En Banc.

March 21, 2000.

Randall J. Schlegel, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Asst. Atty. Gen., Jefferson City, Hugh L. Marshall, Asst. Atty. Gen., Kansas City, for respondent.

DUANE BENTON, Judge.

Frederick Lee Revels, an insanity acquittee, applied for an unconditional release. The circuit court denied the release. After opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, sec 10.* Affirmed.

## I.

On June 22, 1988, Revels killed his grandmother, sister, and nephew. At the time of the crimes, he was hearing voices and abusing a controlled substance. On July 22, 1988, a grand jury indicted Revels on two counts of first degree murder, one count of second degree murder, and three counts of armed criminal action.

On August 27, 1992, Revels was found not guilty by reason of mental disease or defect excluding responsibility. *Section 552.030 RSMo 1986.* He was committed to the Department of Mental Health and delivered to Fulton State Hospital.

On October 31, 1997, Revels applied to the circuit court for unconditional or conditional release, under sections 552.040.5 and 552.040.10.[1] On December 18, 1997, at the beginning of his hearing, Revels dismissed his application for conditional release and proceeded only on the request for unconditional release.

Revels testified that he committed the crimes for which he was charged. He acknowledged hearing voices then, but claimed he stopped hearing them sometime in 1993 or 1994. He explained that, although he was abusing a controlled substance at the time of the murders, he would not "do drugs" if released from custody. He also stated that he would not harm anyone if released.

Revels testified that while committed, he was granted two conditional releases. The first conditional release, in 1993, was revoked in 1994 when he spent the night at a girlfriend's house (itself a release violation) and put his hand through a window while arguing with her. Sometime in 1995, Revels received a second conditional release, which was revoked on March 1, 1997, partly because he failed to attend (required) Alcoholics and Narcotics Anonymous meetings.

Dr. David Hunter, staff psychiatrist at Fulton State Hospital, testified that he diagnosed Revels as having poly-substance dependence, specifically alcohol and cocaine, and anti-social personality disorder. He emphasized that upon returning from the second conditional release, Revels attended counseling meetings only sporadically, but now refused to participate in group meetings, as a protest. According to Dr. Hunter, Revels was reclusive and withdrew from the interaction necessary to his recovery.

Dr. Hunter also testified that in July 1997, he examined Revels and found no evidence of a psychotic or mood disorder. In September 1997, Dr. Hunter found no evidence of thought disturbances, hallucinations, delusions, paranoia, or defects in memory. Also in September 1997, Dr. Hunter wrote that Revels' insight and judgment appeared to be reasonably intact.

At the time of the hearing on December 18, 1997, Dr. Hunter testified, however, that Revels' judgment or insight was no longer intact, and was "certainly" impaired. He testified that Revels would be a danger to others if unconditionally released, due to a greater than 90 percent chance of relapse into substance abuse. Dr. Hunter was not specifically asked whether Revels was suffering from a mental disease or defect at the time of hearing. Dr. Hunter did recommend that an unconditional release be denied.

On January 5, 1998, the trial court denied an unconditional release.

## II.

Revels argues that the trial court erred by denying an unconditional release without making specific findings whether or not he had a mental disease or defect.

▇ Revels seeks an unconditional release under subsections 5 through 9, and 20 of section 552.040. These subsections require that the court "enter an order," *section 552.040.8,* and make specific determinations and findings when *granting* an unconditional release, *section 552.040.9, .20.* Subsections 5 through 9, and 20 of section 552.040 do not require specific findings if the court is *denying* an unconditional release.

This Court last addressed an application for unconditional release in *State v. Tooley,* 875 S.W.2d 110 (Mo. banc 1994). This Court noted:

> Because neither party requested specific findings of fact prior to final submission of the case, we consider all factual issues as being decided in accordance with the result reached by the trial court. *Rule 73.01(a)(3).*

**1.** All citations are to RSMo Supp.1996 unless otherwise noted.

*Id.* at 111 n. 1; cf. *Jensen v. State,* 926 S.W.2d 925, 928[5] (Mo.App.1996). Rule 73.01(a)(3) is now Rule 73.01(c), which requires the request for specific findings to be made on the record "before the introduction of evidence at trial or at such later time as the court may allow." *Rule 73.01(c) (2000).* In this case, Revels never requested specific findings of fact.

Revels relies on *Styles v. State,* 838 S.W.2d 10, 11 (Mo.App.1992) (*Styles I*), which holds:

> Under *Foucha,* it is necessary for a court to make a finding that an insanity acquittee is suffering from a mental illness or defect before it can order that such person shall remain in a mental institution.

See also *Stallworth v. State,* 895 S.W.2d 656, 658[3] (Mo.App.1995); *McKee v. State,* 923 S.W.2d 525, 527[5] (Mo.App.1996); *Marsh v. State,* 942 S.W.2d 385, 388[2] (Mo.App.1997); *Viers v. State,* 956 S.W.2d 465, 466–67[4] (Mo.App.1997); *Rawlings v. State,* 1999 WL 988094, *5 [3] (Mo.App. 1999). The *Styles I* opinion does not control Revels' case because it addressed a conditional release, which is governed by subsections 10 through 18, and 20 of section 552.040.

More importantly, Revels invokes the United States Supreme Court case of *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Revels argues that *Foucha* requires, as a matter of due process, that the trial court make an express finding of a mental disease or defect before denying unconditional release to an insanity acquittee. In fact, no such holding appears in *Foucha.*

■ Most importantly, the holding of *Foucha* prohibits "the indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others." *Foucha,* 504 U.S. at 83, 112 S.Ct. 1780. In Missouri, the standard for denying an unconditional release is whether the insanity acquittee has, and in the reasonable future is likely to have, a mental disease or defect rendering the person dangerous to self or others. *Sections 552.040.7* and *552.040.9.* This statutory standard meets the holding of *Foucha.* See *Foucha,* 504 U.S. at 86–90, 112 S.Ct. 1780 (O'Connor, J. concurring).

There is no requirement that before denying an unconditional release, the circuit court make specific findings that an insanity acquittee is suffering from a mental disease or defect, unless findings are requested in accordance with Rule 73.01(c). To the extent contrary, *State v. Dudley,* 903 S.W.2d 581, 583[2] (Mo.App.1995), should no longer be followed.

■ The circuit court was not required to make specific findings in this case, and thus did not erroneously declare or apply the law. See *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### III.

Second, Revels argues that the trial court erred by denying his application for unconditional release without considering the statutory factors in section 552.040.7:

> At a hearing to determine if the committed person should be unconditionally released, the court shall consider the following factors in addition to any other relevant evidence: (1) whether or not the committed person presently has a mental disease or defect; (2) the nature of the offense for which the committed person was committed; (3) the committed person's behavior while confined in a mental health facility; (4) the elapsed time between the hearing and the last reported unlawful or dangerous act; (5) whether the person has had conditional releases without incident; and (6) whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.

Revels asserts, in particular, that no substantial evidence supported a finding that he suffers from a mental disease or defect,

or that such a finding is against the weight of the evidence.

Where the trial court makes no specific findings of fact, the reviewing court must assume that all facts were found in accordance with the result reached. *Tooley*, 875 S.W.2d at 111 n. 1. The judgment will be reversed if no substantial evidence supports it, or it is against the weight of evidence. *Murphy*, 536 S.W.2d at 32.

Revels stresses the equivocal evidence that he presently has a mental disease or defect, the first factor under section 552.040.7(1). Revels ignores that it is his burden to prove that he no longer has a mental disease or defect rendering him dangerous to himself and others. *Tooley*, 875 S.W.2d at 113.

[W]hen a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him in a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.

*Id.* at 112 (quoting *Jones v. United States*, 463 U.S. 354, 370, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)); cf. *Styles v. State*, 877 S.W.2d 113, 115 (Mo. banc 1994) (*Styles II*).

Revels failed in his burden of proof to rebut this presumption of continuing mental illness following an acquittal by reason of mental disease or defect. Because Revels failed to prove an issue on which he has the burden, the issue is resolved against him.

Finally, Revels claims that as to the other factors in section 552.040.7, there is no substantial evidence, or the judgment is against the weight of the evidence. In fact, Revels all but concedes that the evidence supports the trial court's denial on factors 2 (the crime) and 6 (drug dependence). As for factors 3 (behavior while confined) and 5 (no-incident conditional release), Revels says the evidence is "divided." He does contend that factor 4 (time elapsed since last unlawful or dangerous act) and the "other relevant evidence" weigh in favor of release.

Revels requests this Court to reweigh the evidence. "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree of judgment is wrong." *Murphy*, 536 S.W.2d at 32. This Court should not substitute its judgment for that of the trial court. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 263 (Mo. banc 1998).

Because the judgment is supported by substantial evidence, and is not against the weight of the evidence, the circuit court properly denied an unconditional release.

## IV.

The judgment of the circuit court is affirmed.

All concur.