**STATE of Missouri, Respondent,**

v.

**William G. (Billy) CARTER, Appellant.**

**No. WD 62188.**

Missouri Court of Appeals, Western District.

Jan. 27, 2004.

Irene C. Karns, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Daniel N. McPherson, Jefferson City, MO, Bruce E. Hahn, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, C.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

Billy Carter appeals the judgment of the trial court denying his application for conditional release under section 552.040, RSMo 2000. He contends that the trial court's finding that he suffers from a mental disease or defect was not supported by substantial evidence and was against the weight of the evidence. The judgment of the trial court is affirmed.

### Facts

Mr. Carter was charged in Macon County in January 2000 with forcible sodomy, kidnapping, first-degree burglary, felonious restraint, and deviate sexual assault for forcibly removing his sixteen-year-old neighbor from her home to his own residence, where he sexually assaulted her. A change of venue moved the case to Adair County. On January 21, 2002, the trial court accepted Mr. Carter's plea of not guilty by reason of mental disease or defect and committed him to the custody of the Department of Mental Health.

Less than a month later, Mr. Carter filed an application for conditional release

with proposed release plans attached. At the hearing on the application, the trial court took judicial notice of all of the psychiatric reports in the court file and heard the testimony of the State's witness, Dr. Sonia Anne Partridge, Ph.D., and Mr. Carter. The trial court subsequently denied Mr. Carter's application for conditional release. This appeal by Mr. Carter followed.

## Standard of Review

*Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) governs the standard of review for the denial of an application for conditional release from the custody of the Department of Mental Health. *See also Rawlings v. State*, 22 S.W.3d 719, 723 (Mo. App. W.D.1999). Thus, the trial court's decision will be reversed only if no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* The evidence and all reasonable inferences drawn therefrom favorable to the trial court's judgment is accepted as true, and all evidence to the contrary is disregarded. *State v. Nash*, 972 S.W.2d 479, 481 (Mo.App. W.D.1998).

## Point on Appeal

■ In his sole point on appeal, Mr. Carter argues that the trial court erred in denying his application for conditional release under section 552.040, RSMo 2000, because the trial court's finding that he suffers from a mental disease or defect was not supported by substantial evidence and was against the weight of the evidence.

■ A verdict of not guilty by reason of insanity establishes that the person committed a criminal act and that he committed the act because of mental illness. *Greeno v. State*, 59 S.W.3d 500, 504 (Mo. banc 2001). "When a criminal defendant establishes that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." *Id.* (citing *Jones v. United States*, 463 U.S. 354, 370, 103 S.Ct. 3043, 3053, 77 L.Ed.2d 694 (1983)).

Section 552.040, RSMo 2000, governs the conditional release of a person committed to a mental health facility upon acquittal on the grounds of mental disease or defect. It provides six non-exclusive factors to be considered by the trial court in determining whether a committed person should be conditionally released:

(1) The nature of the offense for which the committed person was committed;

(2) The person's behavior while confined in a mental health facility;

(3) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(4) The nature of the person's proposed release plan;

(5) The presence or absence in the community of family or others willing to take responsibility to help the defendant adhere to the conditions of release; and

(6) Whether the person has had previous conditional releases without incident.

§ 552.040.12, RSMo 2000; *Rawlings*, 22 S.W.3d at 723–24. Subsection 12 further provides that the burden of persuasion "shall be on the party seeking release to prove by clear and convincing evidence that the person for whom release is sought is not likely to be dangerous to others while on conditional release." § 552.040.12, RSMo 2000.

While not expressly required by the statute, the trial court, in denying an application for conditional release, must find that the person still suffers from a mental disease or defect that renders him dangerous to others. *Rawlings*, 22 S.W.3d at 724 (citing *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) and *State v. Nash*, 972 S.W.2d 479 (Mo.App. W.D.1998)). Such finding is necessary because due process forbids the continued confinement of a person acquitted by reason of insanity after the person no longer suffers from mental disease or defect. *Id.* (citing *Foucha*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437).

An insanity acquittal creates a presumption of continuing mental illness. *Greeno*, 59 S.W.3d at 504; *State v. Tooley*, 875 S.W.2d 110, 112 (Mo. banc 1994)(citing *Jones*, 463 U.S. at 366, 103 S.Ct. 3043). Such presumption exists because "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." *Tooley*, 875 S.W.2d at 112 (quoting *Jones*, 463 U.S. at 366, 103 S.Ct. 3043). As long as the presumption of continuing mental illness has not been broken following an acquittal by reason of insanity, the burden of proof need not shift to the State and remains on the insanity acquittee to prove that he no longer has a mental disease or defect rendering him dangerous to himself or others. *Greeno*, 59 S.W.3d at 504; *State v. Revels*, 13 S.W.3d 293, 297 (Mo. banc 2000); *Tooley*, 875 S.W.2d at 113.

The evidence adduced in the hearing on Mr. Carter's application for conditional release included several pre-plea psychiatric reports, the report and testimony of Sonia Partridge, Ph.D., and the testimony of Mr. Carter. The trial court took judicial notice of several psychiatric evaluations of Mr. Carter's mental condition prior to his plea of not guilty by reason of mental disease or defect, which were introduced and considered by the court when Mr. Carter pleaded. In the first report, dated June 5, 2000, A.E. Daniel, M.D., concluded that, at the time of the alleged offenses, Mr. Carter suffered from a mental disease or defect in that he was laboring under delusional beliefs and obsessions and also that Mr. Carter was incompetent to proceed to trial. Specifically, Dr. Daniel diagnosed Mr. Carter with Paraphilia (Sexual Deviation Disorder), Borderline Intellectual Functioning with Psychotic Symptoms, and Mixed Personality Disorder with features of Schizoid, Paranoid, and Passive–Aggressive Types. Based on this report, the trial court found Mr. Carter incompetent to proceed and committed him to the Department of Mental Health.

While at Fulton State Hospital, Mr. Carter was evaluated by Thomas Green, Ph. D., in December 2000, relating to his competency to be tried. Dr. Green diagnosed Mr. Carter with Personality Disorder Not Otherwise Specified with Antisocial Features. He concluded that Mr. Carter did not suffer from a mental disease or defect as defined in Chapter 552 and that he was competent to proceed.

Dr. Daniel reexamined Mr. Carter in February 2001. Dr. Daniel again concluded that Mr. Carter was delusional at the time of the offense and at the time of the evaluation and that he was incompetent to proceed to trial. Dr. Daniel diagnosed Mr. Carter with Delusional Disorder, Erotomanic Type, which is a psychosis and a mental disease or defect as defined in Chapter 552, Sexual Deviation Disorders, and Borderline Intellectual Functioning.

In July 2001, Bruce Harry, M.D., evaluated Mr. Carter's competency to proceed to trial. Dr. Harry diagnosed Mr. Carter with Paraphilia Not Otherwise Specified

and Personality Disorder Not Otherwise Specified with Antisocial and Narcissistic Features. Dr. Harry also concluded that Mr. Carter was not suffering from a mental disease or defect within the meaning of Chapter 552 and was competent to proceed to trial.

Next, Mr. Carter was evaluated by John Rabun, M.D., in October 2001 relating to his competency to proceed and his mental state at the time of the alleged offenses. Dr. Rabun diagnosed Mr. Carter with Personality Disorder, concluded that Mr. Carter did not suffer from a mental disease or defect at the time of the offenses or at the time of the evaluation, and found that Mr. Carter was competent to stand trial.

In January 2002, Mr. Carter pleaded not guilty by reason of mental disease or defect. Based on Dr. Daniel's February 2001 diagnosis of Delusional Disorder, Erotomanic Type, the trial court accepted Mr. Carter's plea and committed him to the Department of Mental Health. Following Mr. Carter's application for conditional release, Sonia Partridge, Ph.D., evaluated him in June 2002. Dr. Partridge diagnosed Paraphilia Not Otherwise Specified, Alcohol Abuse in a Controlled Environment, and Narcissistic Personality Disorder with Antisocial Features concluding that Mr. Carter does not have a mental disease or defect as defined under Chapter 552.

The trial court's finding that Mr. Carter continues to suffer from a mental disease or defect was supported by substantial evidence and was not against the weight of the evidence. Prior to Mr. Carter's plea of not guilty by reason of mental disease or defect, Mr. Carter was evaluated by Dr. Daniel and diagnosed with Delusional Disorder, Erotomanic Type, Sexual Deviation Disorders, and Borderline Intellectual Functioning. Delusional Disorder, Erotomanic Type is a psychosis and a mental disease or defect. The trial court accepted this diagnosis in accepting Mr. Carter's plea. Upon his insanity acquittal, a presumption was created that the mental illness underlying his commitment continues. Dr. Partridge testified that, since his confinement, Mr. Carter has refused to participate in any treatment for his mental illness. Nothing in the record contradicted the evidence that Mr. Carter has had no treatment for his mental illness. Mr. Carter, in his application for conditional release, seemed to acknowledge that he suffers from a mental disease or defect. Under "Conditions for Proposed Release," Mr. Carter wrote, "To find a job if released by the Court, unless my Delusional Disorder, Eromanic (sic) Type prevents me from maintaining a 40 hour week job."

Mr. Carter argues that the reports of Drs. Green, Harry, Rabun, and Partridge and the testimony of Dr. Partridge establish that he does not have a mental disease or defect as defined in Chapter 552. " 'Weight of the evidence' means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics, but on its effect in inducing belief." *Bauer v. Bauer*, 38 S.W.3d 449, 455 (Mo. App. W.D.2001)(quoting *Waddell v. Dir. of Revenue*, 856 S.W.2d 94, 95 (Mo.App. S.D. 1993)). An appellate court should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree of judgment is wrong. *Revels*, 13 S.W.3d at 297 (quoting *Murphy*, 536 S.W.2d at 32). Drs. Green, Harry, and Rabun evaluated and diagnosed Mr. Carter prior to his plea of not guilty by reason of insanity. Given the presumption of continuing mental illness that was created upon his plea and Dr. Partridge's testimony that Mr. Carter has refused all treatment for his mental illness,

their reports provided little probative value as to whether Mr. Carter continued to suffer from a mental disease or defect after his plea and commitment. Furthermore, the trial court was free to disbelieve or give little weight to those reports. *Greeno*, 59 S.W.3d at 505. Additionally, Dr. Partridge testified that, although she concluded that Mr. Carter did not suffer from a mental disease or defect, she understands how Dr. Daniel arrived at his diagnosis. She explained that Mr. Carter appears to be psychotic and out of touch with reality and that it was "a fine line" between her diagnosis and Dr. Daniel's. Dr. Partridge also admitted that Dr. Daniel had more materials to review than she had in making her diagnosis. The trial court's finding that Mr. Carter continues to suffer from a mental disease or defect was supported by substantial evidence and was not against the weight of the evidence.

The trial court did not err in denying Mr. Carter's application for conditional release. The judgment of the trial court is affirmed.

ELLIS, C.J. and LOWENSTEIN, J., concur.