

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD83120 |
| | ) | |
| WILLIAM G. CARTER a/k/a | ) | Filed: September 29, 2020 |
| BILLY CARTER, | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Adair County
### The Honorable Gary L. Dial, Judge

### Before Division Four: Cynthia L. Martin, C.J., P.J., and
### Alok Ahuja and Edward R. Ardini, JJ.

William Carter is currently involuntarily committed to the custody of the Department of Mental Health for care and treatment at Fulton State Hospital. Carter is committed on two separate statutory grounds: (1) pursuant to § 552.040,[1] as a result of a finding in 2002 that he was not guilty of certain sex offenses by reason of mental disease or defect (an "NGRI" finding); and (2) pursuant to a finding following a jury trial that he is a sexually violent predator under § 632.495.

Carter applied for unconditional release from his NGRI commitment. The circuit court denied Carter's application following an evidentiary hearing. Carter appeals. He argues that the circuit court erred in denying his application for unconditional release because it failed to consider that, even if he is released from the NGRI commitment, he will remain in Department of Mental Health custody in a

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2019 Cumulative Supplement.

secure facility pursuant to the separate order committing him as a sexually violent predator.

We affirm.

## Factual Background

In January 2000, Carter was charged in the Circuit Court of Macon County with forcible sodomy, kidnapping, first-degree burglary, felonious restraint, and deviate sexual assault. The charges arose from an incident in which Carter removed his sixteen-year-old female victim from a neighboring home, took her to his own home, and sexually assaulted her. The case was transferred on a change of venue to Adair County. On January 21, 2002, the circuit court accepted Carter's plea of not guilty by reason of mental disease or defect, and ordered that he be committed to the custody of the Department of Mental Health for care and treatment.

Carter applied for conditional release from Department custody less than a month later. Following an evidentiary hearing, the circuit court denied Carter's application. We affirmed. *State v. Carter*, 125 S.W.3d 377 (Mo. App. W.D. 2004). Although Carter contended that the circuit court's finding that he suffered from a mental disease or defect was not supported by substantial evidence and was against the weight of the evidence, we held that "[a]n insanity acquittal creates a presumption of continuing mental illness," and that, "[a]s long as the presumption of continuing mental illness has not been broken following an acquittal by reason of insanity, the burden of proof need not shift to the State and remains on the insanity acquittee to prove that he no longer has a mental disease or defect rendering him dangerous to himself or others." *Id.* at 380 (citations omitted). We held that the circuit court, as fact-finder, could properly have disbelieved Carter's evidence suggesting that he no longer suffered from a mental disease or defect, and that its "finding that Mr. Carter continues to suffer from a mental disease or defect was

2

supported by substantial evidence and was not against the weight of the evidence." *Id.* at 382.

Triggered by Carter's application for conditional release, the State evaluated Carter and commenced a separate proceeding to have him involuntarily committed as a sexually violent predator under § 632.495. In 2003, a jury found Carter to be a sexually violent predator and, based on that finding, the circuit court entered a separate judgment committing Carter to the custody of the Department of Mental Health under § 632.495. We affirmed this judgment on appeal. *In re Care and Treatment of Carter*, No. WD63327, 147 S.W.3d 872 (Mo. App. W.D. 2004) (*mem.*).

In June 2015, Carter filed a second application for conditional release from his NGRI commitment. The circuit court denied Carter's application for conditional release as moot.

> The trial court reasoned that any relief granted to Carter on his application for conditional release under section 552.040.10 would not afford him "any effectual relief" because Carter would remain civilly committed under the SVP Act. Accordingly, the trial court held that "as long as [Carter] remains a[n] SVP under civil commitment pursuant to [the SVP Act], any relief granted under Section 552 is moot."

*State v. Carter*, 551 S.W.3d 573, 575 (Mo. App. W.D. 2018).

We reversed. We drew an analogy between Carter's dual commitment under chapters 552 and 632 and a criminal defendant who is sentenced to concurrent terms of incarceration for separate offenses. Courts have held that a defendant's challenge to less than all of the convictions giving rise to concurrent sentences is not moot, since a defendant might be "'subject . . . to disabilities and legal consequences unique to th[e] [challenged] offense.'" *Id.* at 576 (quoting *State v. Reynolds*, 819 S.W.2d 322, 326 (Mo. 1991)). We held that the same principle should apply to Carter's dual commitments, and should permit him to seek release from one commitment order even while the other remained in effect. We explained that

3

Carter's two commitment orders, and his potential release from those commitment orders, were subject to separate statutes, having separate standards and procedural requirements:

> [c]ivil commitments pursuant to an NGRI plea and an SVP determination are each subject to statutory procedures for securing release. Conditional release from an NGRI commitment can be sought pursuant to section 552.040.10, and unconditional release can be sought from an NGRI commitment pursuant to section 552.040.5. Conditional release from an SVP commitment can be sought pursuant to section 632.498.3. In either case, the court entertaining the application is bound to consider statutory factors, subject to the standard and burden of proof specified by statute. To suggest, however, that a court can deem moot an application filed pursuant to one basis for civil commitment simply because the applicant is concurrently committed pursuant to the other basis for civil commitment is to deprive the committed person of *any* opportunity to secure release. A concurrently committed person must be able to start somewhere. Though Carter cannot be actually released from confinement given his concurrent SVP commitment, he is nonetheless entitled to a hearing and a determination with respect to whether grounds supporting conditional release from his NGRI commitment have been established.

*Id.* at 576-77. We remanded the case to the circuit court for further proceedings on Carter's conditional-release application. *Id.* at 578.

On remand, Carter filed a *pro se* application for *unconditional* release from his NGRI commitment. On March 15, 2019, the court held an evidentiary hearing at which Carter (represented by appointed counsel) elected to proceed solely on his application for unconditional release.

The circuit court denied Carter's application for unconditional release on August 15, 2019, in an eleven-page judgment containing detailed findings of fact. The circuit court found that Carter continued to suffer from Delusional Disorder, although the illness was in remission based on the administration of anti-psychotic medication. The court found that, although Carter "may not be verbalizing delusional symptoms, . . . he has refused to actively participat[e] in treatment

4

groups . . . where his mental status can be evaluated by mental health professionals." The judgment emphasizes that the symptoms of Carter's delusional disorder would return if he stopped taking his medication. The court found that Carter had "refused to take his anti-psychotic medication several times while inpatient at DMH facilities," and had been subjected to involuntary medication orders in 2005, 2007, and in 2011. The court noted that Carter had discarded his medication, and had repeatedly requested that the dosage of his medication be reduced, reflecting "his limited insight into his need for medication for his mental illness." The judgment found that "if given a choice [Carter] will not take anti-psychotic medication freely and willingly without measures in place to compel him to do so."

The court found that Carter's underlying offenses were "violent crimes . . . [which] have had a traumatic and everlasting impact on his victim." The court found that, "[e]xcept for November 2011 to the summer of 2013 [Carter's] behavior while in DMH custody has been riddled with problematic, inappropriate behavior, and non-compliant behavior." The court noted that Carter had "refus[ed] to engage in treatment modalities offered to him for the last four years." He had also "accumulated one hundred and four problem worksheets for inappropriate behavior" in a four-month period. The court noted that Carter had repeatedly been placed on telephone and mail restrictions, most recently for the past four years, because he had tried to contact his victim and Department staff members at their residences, had written threatening letters to individuals outside the facility, and had obtained pornographic material through the mail, including "some that included sexual violence." The court found that "[w]hile in the custody of DMH [Carter] has on four separate occasions become fixated on four different female staff in a manner similar to his committing offenses." In at least one of those cases, Carter's inappropriate

5

behavior toward a female staff member occurred while Carter was not taking his anti-psychotic medication.

Ultimately, the court concluded that Carter "has not met his burden of showing by clear and convincing evidence that he would not be dangerous to himself or others if unconditionally released." The court found that, if released, Carter "is likely to commit another violent crime against another person because of his mental illness," and "could not conform his conduct to the requirements of the law for more than a few months." The court found that Carter "is at a risk of reoffending and engaging in violent behavior if not in a secure mental health facility such as the SORTS [(Sexual Offender Rehabilitation Treatment Services)] unit" in which he was currently housed.

Carter appeals.

## Standard of Review

"When we review a judgment on an application for unconditional release, we affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Grass v. State*, 220 S.W.3d 335, 339 (Mo. App. E.D. 2007) (citing *State v. Revels*, 13 S.W.3d 293, 297 (Mo. 2000), in turn citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976)); *accord State v. Weekly*, 107 S.W.3d 340, 345 (Mo. App. W.D. 2003). We review questions of law *de novo*, including issues of statutory interpretation. *King v. State*, 571 S.W.3d 169, 173 (Mo. App. W.D. 2019).

## Discussion

Carter raises two Points on appeal. First, he argues that the circuit court failed to give proper weight to the fact that Carter will remain subject to commitment as a sexually violent predator even if his application for unconditional release from the NGRI commitment is granted. In his second Point, Carter argues

6

that the circuit court's denial of his application for unconditional release is not supported by substantial evidence.

## I.

In his first Point, Carter argues that the circuit court erred in denying his application for unconditional release from NGRI commitment because it failed to consider his concurrent commitment as a sexually violent predator.

Carter contends that statutes governing commitment as a sexually violent predator, which currently allow only for the conditional release of a committed individual, supersede and displace the separate statutes specifying the standards and procedures for release from an NGRI commitment. He suggests that the sexually violent predator and NGRI commitment statutes are in irreconcilable conflict, and that the later-enacted sexually violent predator statutes must be construed to impliedly repeal or amend the NGRI commitment statutes for persons subject to both. He argues categorically that "[a]n NGRI acquittee who is also committed as a[n] SVP poses no threat to public safety if released from the NGRI" – apparently suggesting that the circuit court was _required_ to grant his application for unconditional release, as a matter of law. He asserts that, "since release from the custody of DMH for those who are dually committed is impossible, the hearings [on an application for unconditional release from an NGRI commitment] are empty exercises that waste the time and resources of the court." Carter argues that he is subject to a "zombie NGRI commitment[ ]" in light of his concurrent commitment as a sexually violent predator.

We reject Carter's argument that his NGRI commitment is simply a meaningless formality, from which the circuit court was required to release him, because he separately satisfied the criteria for commitment as a sexually violent predator. The fact that Carter's actions and mental state make him subject to two different civil commitment statutes, each with its own standards and procedures,

does not establish an irreconcilable conflict between the two statutory schemes, or require that one of the statutes be applied to the exclusion of the other.

"[R]epeals by implication are not favored, and if by any fair interpretation both statutes . . . can stand, there is no repeal by implication and both should be given effect." *Kliethermes v. City of Eldon*, 972 S.W.2d 473, 476 (Mo. App. W.D. 1998) (citing *Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. 1996)). "If two statutes appear to conflict, we attempt to reconcile the language to give effect to both." *Smith v. Mo. Local Gov't Emps. Retirement Sys.*, 235 S.W.3d 578, 581 (Mo. App. W.D. 2007) (citations and internal quotation marks omitted).

The NGRI statute expressly provides that its release procedures are not displaced by other statutes. Section 552.040.3 states that certain other statutory provisions are applicable to NGRI commitments (including certain provisions of chapter 632). But § 552.040.3 also explicitly provides: *"[n]othwithstanding any other provision of law to the contrary*, no person committed to the department of mental health who has been tried and acquitted by reason of mental disease or defect as provided in section 552.030 shall be conditionally or unconditionally released *unless the procedures set out in this section are followed*." (Emphasis added.)

It is frequently the case that an individual's conduct may subject that person to regulation under more than one statute. The fact that an individual's actions may subject the individual to consequences under multiple statutes does not create ambiguity or require that one statute give way to the other. Thus, in *State v. Watts*, 601 S.W.2d 617 (Mo. 1980) – a case which Carter himself cites – the Missouri Supreme Court held that there was no irreconcilable conflict between a statute which prohibited individuals from "operat[ing] a motor vehicle while in an intoxicated condition," and a later-enacted statute which made it a crime to "drive a motor vehicle when the person has ten-hundredths of one percent or more by weight

8

of alcohol in his blood." *Id.* at 619. The court noted that "[c]onvictions under [the two statutes] have different effects upon the defendant's driving privileges." *Id.* Nevertheless, the Court held that "[i]t is not enough to show that the two statutes produce differing results when applied to the same factual situation. Rather, the legislative intent to repeal must be manifest in the positive repugnancy between the provisions." *Id.* at 620 (quoting *United States v. Batchelder*, 442 U.S. 114, 122 (1979) (other citations and internal quotation marks omitted)). "This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* (quoting *Batchelder*, 442 U.S. at 123).

Similarly, in *State v. Ondo*, 232 S.W.3d 622 (Mo. App. S.D. 2007), this Court held that there was no conflict between a criminal statute which classified the defendant's conduct as domestic assault in the *second* degree (because he caused physical injury "by choking" his victim), and another statute which defined the same actions as domestic assault in the *third* degree (for "recklessly caus[ing]" physical injury).

> The fact that another statute proscribes the same conduct does not create an ambiguity. It is axiomatic that a single offense may constitute an offense under two different statutes. When that occurs, the prosecutor has the discretion to decide under which statute to charge the defendant. The fact that two statutes which proscribe substantially the same conduct carry a different category of crime and punishment does not eliminate the prosecutor's discretion to charge the defendant under the statute with harsher punishment.

*Id.* at 629 (citations and internal quotation marks omitted); *accord*, *State v. Edwards*, 579 S.W.3d 249, 257-58 (Mo. App. E.D. 2019).

This is the result we reached in Carter's prior appeal. In that case, the circuit court dismissed Carter's application for conditional release from his NGRI commitment using essentially the same reasoning that Carter advocates now: that Carter's NGRI commitment was essentially meaningless as a legal matter because

9

he was also subject to commitment as a sexually violent predator. We reversed. As explained in our factual statement above, in Carter's prior appeal we found that civil commitment on the basis that a defendant is not guilty by reason of a mental disease or defect, and civil commitment on the basis that the defendant is a sexually violent predator, are subject to different statutory standards, and that the court addressing an application for release must apply the statutory provisions applicable to the particular form of commitment at issue. *State v. Carter*, 551 S.W.3d 573, 576-77 (Mo. App. W.D. 2018). We remanded Carter's case to the circuit court, so that it could apply the standards for conditional release from an NGRI commitment found in § 552.040.10. *Id.* at 577-78. If Carter's current argument were meritorious, we would not have remanded for further proceedings in the prior appeal, but would instead have directed the circuit court to enter a judgment unconditionally releasing Carter from his NGRI commitment. The fact that we did not order the entry of judgment for Carter in the prior appeal is necessarily inconsistent with the argument he makes now.

Notably, Carter's current arguments are the opposite of the argument he made in his prior appeal. In <u>this</u> appeal, Carter argues "that the trial court misapplied the law in <u>disregarding</u> the SVP commitment, specifically, that the SVP commitment effectively removed any concern for public safety from the decision." But this is *exactly the opposite* of the argument Carter made in the prior appeal. In <u>that</u> case, Carter argued:

> [T]here is nothing in any of the language of section 552.040 RSMo which makes its operation and the relief it affords applicable only to a NGRI committee who is not also committed as an SVP; indeed, neither the term "sexually violent predator" nor any reference to the SVP act appear anywhere in the whole of section 552.040 RSMo.
>
>   . . . .

10

> . . . Nowhere in section 552.040.12 RSMo is the committing court directed to give its attention to whether the NGRI committed person is also committed as an SVP.
>
> . . . .
>
> . . . Carter suggests that ***SVP proceedings in the probate court authorized by Chapter 632 can have no bearing whatsoever on NGRI proceedings in the committing court*** separately authorized by Chapter 552, including conditional release applications under section 552.040 RSMo; the release proceedings in the respective statutes make no reference to each other, and neither statute is dependent on or subservient to the other. ***They are separate and distinct statutes and must be treated as such.***

Appellant's Br. at 17, 19, *State v. Carter*, No. WD80992 (filed Jan. 8, 2018) (emphasis added). Carter previously argued that the fact that he was also committed as a sexually violent predator "can have no bearing whatsoever" on his application for release from NGRI commitment. Yet he now argues that the circuit court committed reversible error by evaluating his application for release from his NGRI commitment separately from his sexually violent predator commitment – exactly what he previously argued was required.

In the current appeal, Carter essentially agrees with the conclusion the circuit court had reached before the first appeal – that Carter's NGRI commitment is essentially a meaningless formality without legal effect, because of his concurrent commitment as a sexually violent predator. Whereas the circuit court previously held that the mootness of the NGRI commitment justified the dismissal of Carter's application for conditional release, Carter now argues that the mootness of his NGRI commitment justifies the court in summarily vacating that commitment order. Carter now essentially <u>agrees</u> that the NGRI commitment is moot; he simply advocates a different <u>remedy</u> to address that purported mootness.

We reject Carter's flip-flopping, and adhere to our decision in his prior appeal: his application for release from NGRI commitment is governed by the provisions of chapter 552 establishing the standards, and procedures, for release

11

from such a commitment. These standards and procedures are unaffected by the fact that Carter has *also* been committed to Department of Mental Health custody as a sexually violent predator. We reject Carter's first Point, which argues that the statutory provisions governing release from NGRI commitment were wholly displaced in Carter's case by the statutes governing commitment of sexually violent predators.

## II.

In his second Point, Carter argues that the circuit court's denial of his application for unconditional release was not supported by substantial evidence.

Section 552.040 governs conditional and unconditional releases from an NGRI commitment. Section 552.040.5 permits "[t]he committed person . . . [to] file an application . . . seeking an order releasing the committed person unconditionally." Section 552.040.7 sets forth the factors the circuit court must consider in deciding an application for unconditional release, "in addition to any other relevant evidence":

(1) Whether or not the committed person presently has a mental disease or defect;

(2) The nature of the offense for which the committed person was committed;

(3) The committed person's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.

Additionally, § 552.040.9 requires that, before ordering an unconditional release, the court find that the committed person "does not have, and in the

12

reasonable future is not likely to have, a mental disease or defect rending the person dangerous to the safety of himself or others." Finally, § 552.040.20 specifies that an individual committed in connection with the commission of a dangerous felony (like Carter)

> [s]hall not be eligible for conditional or unconditional release . . . unless, in addition to the requirements of this section, the court finds that the following criteria are met:
>
> (1)  Such person is not now and is not likely in the reasonable future to commit another violent crime against another person because of such person's mental illness; and
>
> (2)  Such person is aware of the nature of the violent crime committed against another person and presently possesses the capacity to appreciate the criminality of the violent crime against another person and the capacity to conform such person's conduct to the requirements of law in the future.

§ 552.040.20.

The statute provides that "[t]he burden of persuasion . . . shall be on the party seeking unconditional release to prove by clear and convincing evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others." § 552.040.7.

Carter's second Point assumes that the circuit court's adverse judgment had to be supported by substantial evidence, in a case in which he bore the burden of proof. That is not the law.

> When the burden of proof is placed on a party for a claim that is *denied*, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it. [¶] Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.

13

*Adoption of K.M.W.*, 516 S.W.3d 375, 382 (Mo. App. S.D. 2017) (citations and internal quotation marks omitted); *see also, e.g., Koeller v. Malibu Shores Condo. Ass'n*, 602 S.W.3d 283, 287 (Mo. App. S.D. 2020); *Maly Com. Realty, Inc. v. Maher*, 582 S.W.3d 905, 911 (Mo. App. W.D. 2019). Because Carter bore the burden of proof to establish, by clear and convincing evidence, that he met the standards for unconditional release, the circuit court was not required to have substantial evidence to support its judgment against him – it could simply find his evidence not to be persuasive.

In any event, as described in our fact statement above, the circuit court's judgment made detailed findings concerning: Carter's current mental health; his need for (and resistance to taking) anti-psychotic medication; his refusal to participate in therapy offered to him; his repeated and troubling conduct violations while committed; and his dangerousness, and likelihood of reoffense, if released. Carter does not challenge the evidentiary basis for any of these findings – even though they led the circuit court to conclude that Carter did not satisfy <u>any</u> of the criteria for an unconditional release.

Instead of challenging the evidentiary basis for the circuit court's findings, Carter's second Point essentially repeats the argument from his first Point – that he necessarily satisfied the criteria for an unconditional release from his NGRI commitment because, if he won such a release, he would remain in the Department of Mental Health's custody pursuant to his separate commitment as a sexually violent predator. We have rejected that argument as a legal proposition in § I, above. We reject it as a factual proposition also.

It bears emphasis that, although Carter is currently confined in a secure facility as a result of his commitment as a sexually violent predator, that confinement is not necessarily permanent or immutable. Carter is entitled to seek conditional release from his commitment as a sexually violent predator pursuant to

14

§ 632.505. (Presumably, Carter intends to seek such a conditional release if and when he obtains a conditional or unconditional release from his NGRI commitment.) Carter's claim that there is a *"[c]ertainty* of [his] continuing confinement in the secure environment of the SORTS program," even if he is unconditionally released from his NGRI commitment, is inaccurate. Because Carter's confinement based on his commitment as a sexually violent predator is subject to change, the circuit court was fully justified in refusing to rely on Carter's continuing confinement as a basis to fully and permanently release him from his NGRI commitment.[2]

Point II is denied.

## Conclusion

We affirm the judgment of the circuit court, which denied Carter's application for unconditional release from his NGRI commitment.

_____
Alok Ahuja, Judge

All concur.

---

[2] It may be that, in determining whether Carter would present a danger of reoffense if released from NGRI commitment, the circuit court was required to consider the extensive and restrictive conditions to which Carter would be subject if he were later to be conditionally released from commitment under the sexually violent predator statutes. *See* § 632.505; *King v. State*, 571 S.W.3d 169 (Mo. App. W.D. 2019). Carter does not make that argument here, and we do not address it.

15